FILED

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 SEP 29  PM 2:49

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| MASSACHUSETTS BAY INSURANCE COMPANY, | } } } | |
| Plaintiff, | } } | |
| v. | } } } | CASE NO. CV 98-B-0683-S |
| SIGNAL CONSTRUCTION COMPANY, INC, a corporation; KRISTY LINDSEY, a minor by and through her father and next friend Loyd Lindsey; LOYD LINDSEY, an individual, | } } } } } } } | |
| Defendants. | } } | |

ENTERED

SEP 2 9 1999

MEMORANDUM OPINION

Currently before the court are the cross Motions for Summary Judgment filed by plaintiff Massachusetts Bay Insurance Company ("MBIC") and defendant Signal Construction Company, Inc. ("SCCI"). MBIC initiated this case by filing a complaint seeking a declaration that it has no obligation to defend or indemnify its insured, SCCI, with respect to a liability claim filed by defendant Kristy Lindsey, a minor, and her father, Loyd Lindsey. The lawsuit was filed against SCCI in the Circuit Court for Jefferson County, Alabama (Civil Action No.: CV-95-06432) ("Lindsey complaint") for personal injury sustained by Kristy Lindsey in an automobile accident. Upon consideration of the record, the submissions of the parties, and the argument of counsel, the court is of the opinion that plaintiff MBIC's Motion for Summary Judgment is due to be granted and SCCI's Motion for Summary Judgment is due to be denied.

22

## I. FACTUAL SUMMARY

The facts of this case are not disputed. MBIC entered into an insurance contract, policy

number ZDA 3882089 01, with SCCI. (Pl.'s Evidentiary Submission in Supp. of Its Mot. for

Summ. J., Exh. 5.)[1] The policy was effective for the policy period of May 14, 1993 through May

14, 1994. (PX 5 at 1.) The insurance policy provided general liability insurance for SCCI as

documented on the policy's declarations page. (*Id*.) Section IV of MBIC's policy, entitled

"Commercial General Liability Conditions," states, in relevant part, the following:

2.      Duties In The Event of Occurrence, Claim or Suit.

. . .

b.      If a claim is made or "suit" is brought against any insured, you
        must:

        (1)     Immediately record the specifics of the claim or "suit" and
                the date received; and

        (2)     Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as
soon as practicable.

c.      You and any other involved insured must:

        (1)     Immediately send us copies of any demands, notices,
                summonses or legal papers received in connection with the
                claim or "suit"; ...

(PX 5, at 6 of the Commercial General Liability Coverage Form.)

On January 22, 1994, Kristy Lindsey was injured in an automobile accident. (PX 1.)

Kristy Lindsey sustained personal injuries and, along with her father, Loyd Lindsey, filed a civil

---

[1] Hereafter the exhibits to plaintiff's Evidentiary Submission in Support of Its Motion for
Summary Judgment will be designated "PX," followed by the exhibit number.

suit on September 11, 1995, in the Circuit Court of Jefferson County. (*Id.*) The case was styled
Kristy Lindsey, a minor, by and through her father and next friend, Loyd Lindsey. (*Id.*)

It is undisputed that the Lindsey "Summons and Complaint" was served on SCCI on
October 20, 1995. (PX 6, Starr III Dep. at 14-16; PX 2.) The certified letter containing the
Lindsey "Summons and Complaint" was delivered to SCCI's post office box where John C. Starr
III received and signed for the certified letter. (PX 6, Starr III Dep. at 14-16.) John C. Starr III
was the Secretary/ Treasurer for SCCI. (PX 6, Starr III Dep. at 10-11.) The certified letter
containing the Lindsey "Summons and Complaint" was never opened or read by anyone at SCCI
at the time it was received. (PX 6, Starr III Dep. at 23-24.) Although John C. Starr III did not
actually remember signing for and receiving the certified letter, he stated that it was his routine
practice to give the mail to his secretary to distribute to the proper persons at SCCI. (*Id.* at 15-
16, 28-29.)

The certified letter was addressed to "Signal Construction Co., Inc., c/o John C. Starr,
2761 Forsythe Lane, Montgomery, AL 36116." (PX 2.) This street address is the address of a
rental house owned by John C. Starr, Jr., who was the President of SCCI at that time. (Def.'s
Evidentiary Submission, Tab C, Starr, Jr., Dep. at 7-9, 11).[2] SCCI's street address was 2536
Midpark Drive, Montgomery, Alabama, and its mailing address was P.O. Box 20641,
Montgomery, Alabama 36120. (*Id.* at 15-16.) Although the certified letter was addressed to
2761 Forsythe Lane, it was delivered to SCCI's post office box. (PX 6, Starr III Dep. at 27-28.)

In September 1995, SCCI's secretary began chemotherapy treatment for cancer and
continued the therapy up until the time of her death in December of 1995. (DX C, Starr, Jr.,

[2]Hereafter the exhibits to defendants' Evidentiary Submission in Support of its Motion for
Summary Judgment will be designated "DX," followed by the exhibit letter.

3

Dep. at 37-40.) SCCI argues that the certified letter appears to have been misplaced by the secretary during the time she was undergoing therapy. (SCCI's Br. in Supp. of Mot. for Summ. J. at 6-7.) There is no evidence, however, that this actually occurred. It was not until August of 1998, approximately five months after the filing of this declaratory judgment complaint, that the certified letter, still sealed, was discovered by John C. Starr III, while looking through some unrelated documents in a file cabinet drawer at SCCI's office. (PX 6, Starr III Dep. at 21-24.)

SCCI contends that it did not become aware of the Lindsey complaint until July of 1997 when John C. Starr III received a telephone call from the law firm representing Lindsey regarding a subpoena that had been issued to SCCI in the Lindsey action. (*Id.* at 16-18; PX 7 Starr, Jr., Dep. at 43-44.) John C. Starr III requested and received a copy of the Lindsey complaint from Lindsey's attorney. (PX 6, Starr III Dep. at 17.) Upon receipt of the Lindsey complaint, John C. Starr III contacted SCCI's insurance agent and provided him with a copy of the Lindsey complaint. (PX 6, Starr III Dep. at 18.) On July 21, 1997, twenty-two months after SCCI had been served with the complaint, SCCI's insurance agency faxed an Accord General Liability Notice of Occurrence/Claim Form regarding the Lindsey complaint to MBIC. (PX 3; PX 8, Snook Dep. at 39-40.) Sally Snook was the adjuster handling the matter for MBIC. (PX 4.) This was the first notice that MBIC had of the Lindsey complaint. (PX 8, Snook Dep. at 39-40.)

On July 24, 1997, MBIC sent a reservation of rights letter to SCCI. (PX 4.) The reservation of rights letter specifically stated that coverage might be denied to SCCI because of SCCI's failure to comply with notice provisions contained in Section IV of MBIC's policy entitled "Commercial General Liability Conditions." (*Id.*) MBIC filed this declaratory judgment action to determine its duties and obligations regarding the Lindsey complaint under the policy it issued to SCCI. (Pl. Compl. Prayer for Relief ¶ 2.)

4

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. DISCUSSION

MBIC contends that it is entitled to summary judgment because of SCCI's failure to comply with the notice provisions contained in its insurance policy. However, SCCI contends that it timely notified MBIC of the Lindsey complaint upon learning of the complaint in July of 1997. Additionally, SCCI argues its twenty-two-month delay in providing notice to MBIC should

5

be excused because SCCI was ignorant of the lawsuit as a result of its failure to open and read the certified letter containing the Lindsey "Summons and Complaint." (SCCI's Brief in Support of Mot. for Summ. J. at 3.)

"This court will construe an insurance contract as it is written when its meaning is unambiguous and clear." *General Agents Ins. Co. of America, Inc. v. Compton,* 921 F.Supp. 716, 721 (N.D. Ala. 1996) (citing *Southeastern Fire Ins. Co. v. Heard,* 626 F.Supp. 476, 477 (N.D. Ga.1985). It is the duty of the court to interpret the terms of an insurance contract in a rational and practical manner and only those clauses which are uncertain may be favorably construed for the insured. *Id.* at 721-22 (citing *Green v. Merrill,* 308 So.2d 702, 704 (Ala. 1975); *Alabama Farm Bureau Mut. Casualty Ins. Co., Inc. v. Goodman,* 188 So.2d 268, 270 (Ala. 1966)). Additionally, the Alabama Supreme Court has held,

> [i]n the absence of statutory provisions to the contrary, insurance
> companies have the same right as individuals to limit their liability,
> and to impose whatever conditions they please upon their
> obligations not inconsistent with public policy; and the courts have
> no right to add anything to their contracts, or to take anything from
> them.

*Goodman,* 188 So.2d at 270.

Proper notice is a prerequisite to coverage under MBIC's policy. The Alabama Supreme Court has considered the language contained in MBIC's policy requiring notice of a claim or "suit" "as soon as practicable," and has held that such requirement generally means that notice must be given "within a reasonable time in view of all the facts and circumstances of each particular case." *Pan American Fire & Cas. Co. v. DeKalb-Cherokee Counties Gas District,* 266 So.2d 763, 771 (Ala. 1972). Absence of prejudice to the insurer from the delay "is immaterial to a determination of the reasonableness of the delay where the giving of reasonably

6

timely notice is expressly made a condition precedent." *Southern Guaranty Ins. Co. v. Thomas,*
334 So. 2d 879, 883 (Ala. 1976).

In determining whether a delay in giving notice was reasonable, a court must consider only
two factors, the length of the delay and any reasons for the delay. *Haston v. Transamerica Ins.
Services,* 662 So.2d 1138, 1141 (Ala. 1995) (citation omitted); *CIE Service Corp. v. Smith,* 460
So.2d 1244, 1246 (Ala. 1984). Mitigating evidence offered by the insured can create a question
of fact as to whether the notice was reasonable. *See United States Fidelity and Guaranty Co. v.
Bonitz Insulation Co. of Alabama,* 424 So.2d 569, 572-73 (Ala. 1982). However, "where an
insured fails to show a reasonable excuse or the existence of circumstances that would justify a
protracted delay, the court should as a matter of law hold that there has been a breach of the
condition as to notice." *Thomas,* 334 So.2d at 882-83 (citation omitted); *see also State Farm Fire
& Cas. Co. v. Wiggins,* 972 F.Supp. 570, 573 (M.D. Ala. 1997) ("Where there is no reasonable
excuse for a delay in giving notice, the issue of whether the delay was reasonable may be decided
as a matter of law.").

SCCI makes two arguments that MBIC should not be relieved of its obligation to defend
and indemnify it in the Lindsey complaint. First, SCCI contends that it provided timely notice of
the Lindsey complaint after learning of it in July of 1997. It is undisputed, however, that SCCI
was served with the Lindsey complaint on October 20, 1995. It was at that point in time, rather
than July of 1997, that SCCI had the duty under the policy to notify MBIC "as soon as
practicable" of the Lindsey complaint, regardless of any reasons offered by SCCI for not opening
and reading the certified letter. The court finds as a matter of a law that the twenty-two-month
delay in providing notice to MBIC did not comply with the notice provisions of MBIC's policy.
*See Wiggins,* 972 F.Supp. at 574-75 (unexcused delay of more than three years in notifying

7

insurer of accident or occurrence and of more than one year in forwarding complaint held unreasonable under policy requiring insured to give notice of accident or occurrence as soon as practicable and to forward complaint immediately) *Sears Roebuck & Co. v. Southern Guar. Ins. Co.*, 675 So. 2d 449, 451 (Ala. 1996) (over twelve-month delay held untimely as a matter of law); *Pharr v. Continental Casualty Co.*, 429 So. 2d 1018, 1019 (Ala. 1983) (eight-month delay held untimely as a matter of law); *B&M Homes, Inc. v. American Liberty Insurance*, 356 So. 2d 1195, 1196 (Ala. 1978) (seven-month delay held untimely as a matter of law); *Liberty Mutual Ins. v. Bob Roberts and Company, Inc.*, 357 So. 2d 968, 971 (Ala. 1978) (sixteen-month delay held untimely as a matter of law); *Thomas*, 334 So. 2d at 883-84 (Ala. 1976) (six-month delay held untimely as a matter of law).

SCCI's second argument is that its twenty-two month delay in providing notice should be excused because it was not aware of the Lindsey complaint prior to July of 1997 and, therefore, could not possibly have given notice of it. SCCI offers two reasons as to why the certified letter was never opened or read by anyone at SCCI. SCCI first attempts to excuse its delay in providing timely notice by arguing that it was reasonable for John C. Starr III not to open the certified letter. SCCI argues that because the certified letter bore the wrong mailing address and was addressed to "John C. Starr," the father of John Starr, Jr., who had no relationship with SCCI, it would have been unreasonable for John C. Starr III to open the certified letter. However, SCCI offers no evidence that this was the reason the envelope was never opened by John C. Starr III or anyone else at SCCI. Even if this was the reason the certified letter was never opened, the court does not find this to be a valid excuse for the twenty-two-month delay in providing notice. The intended recipient of the certified letter was clearly indicated as "Signal Construction Co., Inc." (PX 2.) The fact that the wrong address was placed on the envelope is

8

irrelevant because it was nevertheless delivered to SCCI's post office box. Furthermore, John C. Starr III signed for the certified letter, and he believes he gave it to his secretary to be distributed as office mail. Additionally, the address was recognizable to SCCI since it was the address of a rental house owned by John C. Starr, Jr., the president of SCCI. The court finds that this explanation does not justify a twenty-two-month delay in providing notice.

The second reason given by SCCI as to why the certified letter was never opened is that it *may* have been misplaced by the secretary who was undergoing chemotherapy treatment at the time the letter was received. SCCI argues that its practice in handling mail was reasonable, and that it was reasonable to expect that SCCI's secretary, who was undergoing chemotherapy treatment might, in the midst of her personal turmoil, misplace or set aside an envelope. (SCCI's Br. in Supp. of Mot. for Summ. J. at 6.) No one, however, can definitively establish what happened to the certified letter after it was received by John C. Starr III. (SCCI's Mot. for Summ. J. at 3-4.)

SCCI relies on a number of cases to support its argument that SCCI's ignorance of the Lindsey complaint should excuse it from providing timely notice to MBIC. However, SCCI's reliance on these cases is misplaced. First, this is not a situation in which there was no reason to know of the possible claim. *See Brad's Machine Products, Inc. v. Phoenix Assurance Co. of New York,* 489 F.2d 622 (5th Cir. 1974). Rather, SCCI received and took possession of a complaint via certified mail in October of 1995, and therefore had reason to know of a possible claim. Nor is this a situation in which the insurer "substantially contributed" to or caused the late notice by bringing about uncertainty as to whether there was coverage. *See Middlesex Mut. Ins. Co. v. Wells,* 453 F.Supp. 808 (N.D. Ala. 1978), and *St. Paul Fire & Marine Ins. Co. v. Elliott,* 545 So.2d 760 (Ala. 1989). John C. Starr III knew that upon learning of the Lindsey complaint, SCCI

9

was to notify its insurer of such complaint. John C. Starr III testified that if he had read the Lindsey complaint in October of 1995, he would have contacted SCCI's attorney and SCCI's insurance agent for coverage. (PX 6, Starr III Dep. at 19 and 20.) There is no evidence to indicate that MBIC substantially contributed to either SCCI's ignorance of the Lindsey complaint or its failure to timely notify MBIC of the Lindsey complaint. Finally, the instant case does not involve the issue of whether the insured should have known that an "occurrence" would give rise to a claim. *See CIE,* 460 So.2d 1244.[3] In the case at bar, a claim had clearly already been made. It is notice of this claim, rather than notice of the accident, that MBIC contends is untimely.

SCCI's only reason for failing to provide notice is that it failed to open and read the certified letter containing the Lindsey complaint. This excuse does not justify the delayed notice, and MBIC, therefore, is entitled to be relieved from its obligations under the insurance policy. *See e.g., Sears, Roebuck & Co.,* 675 So.2d at 451 (holding that insured's twelve-month delay in notifying the insurer of a claim, without a valid explanation for the delay, operated to exclude coverage under the insurance policy).

SCCI was served with the Lindsey complaint on October 20, 1995, and at that point SCCI had a duty to comply with the notice provisions in MBIC's policy and failed to do so. The events at SCCI's office regarding the handling of the letter are irrelevant. MBIC cannot be

---

[3]SCCI cites *CIE* in support of its argument that SCCI's lack of actual knowledge should excuse its late notice. In *CIE,* the Alabama Supreme Court, in excusing the insured's delay in providing notice to the insurer, found that because the law made it difficult to impose liability on a person for the intentional criminal act of a third person, it was not reasonably foreseeable that such would give rise to a claim against the insured. *Id.* at 1427. However, the court specifically acknowledged that, "if the victim of the crime here had told the security service that she was considering filing a claim against it, or if the security service knew that a lawsuit was being contemplated, then, under those circumstances, it might have been unreasonable for the insured to await the filing of the suit to notify its carrier." *Id.* In the instant case, a claim had already been made, and it was unreasonable for SCCI to delay notifying MBIC of such claim.

disadvantaged because of an insured's failure to open and read a properly delivered certified letter. If the excuse offered by SCCI for not reading the certified letter is valid, then the notice provisions contained in MBIC's policy, as well as any other insurance policy, would in effect be rendered useless. SCCI offers no valid excuse for the twenty-two-month delay in giving notice of the Lindsey complaint. As a result, MBIC's Motion for Summary Judgment is due to be granted and SCCI's Motion for Summary Judgment is due to be denied.

## III. CONCLUSION

Upon consideration of all the evidence, the court concludes that plaintiff's Motion for Summary Judgment is due to be granted and defendant's Motion for Summary Judgment is due to be denied. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this _9th_ day of September, 1999.

Sharon Lovelace Blackburn

**SHARON LOVELACE BLACKBURN**
United States District Judge

11